T.C. Memo. 2004-95

UNITED STATES TAX COURT

ALDEN L. CLOPTON AND YOLANDA Y. CLOPTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4627-03.                    Filed April 6, 2004.

<u>Frank Sommerville</u>, for petitioners.

<u>W. Lance Stodghill</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' 1999 Federal income tax of $221,269.96.  The sole
issue for decision is whether a lump-sum amount received in
exchange for an interest in a trust holding the right to receive
future annual lottery payments is ordinary income or capital

gain.  We hold under the substitute for ordinary income doctrine that the lump-sum amount is ordinary income.

Background

The parties submitted this case fully stipulated under Rule 122.[1]  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners, Mr. Clopton and Mrs. Clopton, resided in Pearland, Texas, at the time they filed their petition.

Mr. Clopton and two coworkers participated in a lottery pool to purchase 60 tickets costing $1 each for the June 4, 1997, Texas Lottery drawing.  One of the purchased tickets was the winning ticket for the lottery drawing.  The prize for the lottery drawing was valued at $9 million and was payable in 25 annual installments of $360,000.

In June 1997, Mr. Clopton, R.L. Littleton, III, Freddie Lofton, Joseph Hill, and Sally Hill, as trustors, established the "June 4, 1997 Lottery Trust" (the trust).  Under the terms of an amended trust agreement (trust agreement), Mr. Clopton and the other trustors granted, assigned, and delivered all their rights, title, and interests in the lottery ticket to the trust.  Mr. Clopton held a one-third beneficial interest in the trust and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

each of the other trustors held a one-sixth beneficial interest. The trust agreement provides that the trust shall within 5 business days after the receipt of any cash amount from the Texas Lottery Commission, distribute all cash amounts received by the trust to the beneficiaries in proportion to their respective beneficial interests in the trust. A portion or all of each beneficial interest could be assigned to any other person or to any organization. The first prize payment was made in June 1997, with subsequent installments to be paid on or about June 15 of every year continuing through June 15, 2021. There is no evidence that the trust has held any other property or has been involved in any other activity.

On July 28, 1999, Mr. Clopton and Singer Asset Finance Co., LLC (Singer) entered into a "Sale Agreement for Lottery Prize Payments of Alden Clopton" and "Terms Rider to Sale Agreement for Lottery Prize Payments of Alden Clopton" (the sale agreements), which provided that Mr. Clopton's interest in the rights, title, and interest in the lottery prize were sold and assigned to Singer. Under the terms of the sale agreements, 20 annual payments of $120,000, payable on or about June 15 of the years 2000 through 2019, were sold to Singer for $1,155,000. The sale agreements provided that the law of Texas required the parties to consummate an agreement and to obtain a court order directing the Texas Lottery Commission to make the payments to Singer. The

record is unclear whether Singer ultimately received the payments from the trust or directly from the Texas Lottery Commission. The sale agreements also provided that Mr. Clopton was the sole owner of the portion of the lottery prize being assigned to Singer free and clear of any right, interest, or claim of any other person or entity, and Mr. Clopton had not previously assigned, pledged, or otherwise encumbered his rights in the lottery prize. Finally, the sale agreements stated:

> 1) The lottery law in Texas has been interpreted as not permitting voluntary assignments of lottery prize payments. However, the lottery law does not prohibit the voluntary assignment of a beneficial interest in a trust. The record owner of the Lottery Prize is the June 4th Lottery Trust. Lottery Winner [Mr. Clopton] is a beneficiary of the June 4th Lottery Trust and desires to assign his entire beneficial interest in said trust to Purchaser [Singer].

The right to receive the 2020 and 2021 payments was not sold or assigned.

On August 4, 1999, the parties to the sale agreements filed with the Probate Court for Travis County, Texas (Travis County Probate Court), a joint petition for a declaratory judgment allowing Mr. Clopton to assign all or a portion of his beneficial interest in the trust. On October 5, 1999, the Travis County Probate Court issued a final declaratory judgment (the declaratory judgment) allowing the assignment of Mr. Clopton's beneficial interest in the trust for the years 2000 through 2019.

Singer issued to Mr. Clopton a Form 1099-B, Proceeds From Broker and Barter Exchange Transactions, for 1999. The Form 1099-B showed proceeds from the sale of "Stocks, bonds, etc." of $1,155,000.10.

Petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for 1999. On Schedule D, Capital Gains and Losses, petitioners reported the assignment of the 20 future annual payments of $120,000 to Singer as a sale of a capital asset held more than 1 year. Petitioners reported a sales price of $1,155,000, a cost or other basis of $10,334,[2] and a long-term capital gain of $1,144,666.

On December 24, 2002, respondent issued a notice of deficiency to petitioners for the year 1999. In the notice, respondent determined that the $1,155,000 received from Singer was ordinary income. Respondent determined that the cost or other basis reported on petitioners' return with respect to the amount received from Singer was zero.

Petitioners reported on their joint return for 1999 a short-term capital loss of $9,088 on Schedule D, Capital Gains and Losses, for unrelated transactions. Due to a scrivener's error,

---

[2]The record does not reflect how petitioners computed the cost or other basis amount of $10,334. Petitioners have not argued or elaborated on brief with respect to this point, nor have they argued that if we find for respondent then this basis amount must be considered in calculating the amount of ordinary income resulting from the sale to Singer.

the notice of deficiency failed to state the proper adjustment, thereby denying petitioners the benefit of this capital loss. The parties agree that petitioners are entitled to a short-term capital loss adjustment, subject to the limitations on the amount of such adjustment, if respondent ultimately prevails in this case.

## Discussion

The parties dispute whether the $1,155,000 received by Mr. Clopton from Singer is ordinary income or capital gain. Our resolution of the issue presented does not depend on who has the burden of proof in this case. Resolution of this issue depends on whether the sale to Singer involved a capital asset within the meaning of section 1221.

Section 1221 provides the following definition of the term "capital asset":

SEC. 1221. Capital Asset Defined.

(a) In general.

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include--

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

(2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;

(3) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by--

(A) a taxpayer whose personal efforts created such property,

(B) in the case of a letter, memorandum, or similar property, a taxpayer for whom such property was prepared or produced, or

(C) a taxpayer in whose hands the basis of such property is determined, for purposes of determining gain from a sale or exchange, in whole or part by reference to the basis of such property in the hands of a taxpayer described in subparagraph (A) or (B);

(4) accounts or notes receivable acquired in the ordinary course of trade or business for services rendered or from the sale of property described in paragraph (1);

(5) a publication of the United States Government (including the Congressional Record) which is received from the United States Government or any agency thereof, other than by purchase at the price at which it is offered for sale to the public, and which is held by--

(A)  a taxpayer who so received such publication, or

(B)  a taxpayer in whose hands the basis of such publication is determined, for purposes of determining gain from a sale or exchange, in whole or in part by reference to the basis of such publication in the hands of a taxpayer described in subparagraph (A). ***

Petitioners contend that capital gains treatment is appropriate because a beneficial interest in the trust was assigned and the future annual lottery payments were payable to the trust and not to Singer. Petitioners claim that because an interest in a trust not used in a taxpayer's trade or business is not excluded from capital asset status, the sale of an interest in a trust results in capital gain.

This Court and the Court of Appeals for the Ninth Circuit have previously addressed the issue of whether a lump-sum amount received in exchange for the assignment of the right to receive future annual lottery payments is ordinary income or capital gain. Respondent contends that these cases are controlling for purposes of deciding the present issue.[3]

In Davis v. Commissioner, 119 T.C. 1 (2002), the taxpayer won a California State lottery prize and assigned his right to receive annual lottery payments to a trust. Id. at 2 n.2. He and his wife took all subsequent actions with respect to the lottery payments and took the position that all income of the trust was includable in their income. Id. A portion of each of 11 of the future annual lottery payments was subsequently assigned to Singer in exchange for a lump-sum payment. Id. at 3.

---

[3]On brief, respondent also raises the issue of whether the lump-sum payment constitutes ordinary income because of the grantor trust rules under secs. 671-679. This issue was not raised in the notice of deficiency, and it is unnecessary for us to address it.

We held that the right to receive such future annual payments does not constitute a capital asset within the meaning of section 1221 and, therefore, the lump-sum payment was ordinary income. Id. at 7. We have subsequently relied on and followed our analysis in Davis. See Simpson v. Commissioner, T.C. Memo. 2003-155; Johns v. Commissioner, T.C. Memo. 2003-140; Boehme v. Commissioner, T.C. Memo. 2003-81.

In Simpson v. Commissioner, supra, we addressed a situation with facts almost identical to the instant case. The lottery winner in that case assigned his lottery prize to a trust of which he was sole trustee. Like the taxpayers in Davis v. Commissioner, supra, the lottery winner took the position that all income of the trust was includable in his income. Id. at n.2. The lottery winner subsequently entered into assignment agreements whereby the right to receive all future annual lottery payments for the years 1999 through 2008, and a portion of the payments for 1997 and 1998, was assigned to Singer. The trust retained the right to a portion of the payments for 1997 and 1998, and the right to receive future annual payments for the years 2009, 2010, and 2011 was not assigned. Relying on our analysis in Davis, we held that the right to receive the future annual lottery payments did not constitute a capital asset. Additionally, we noted that the right to receive future annual lottery payments is distinguishable from currency contracts,

stocks, bonds, and options, because the taxpayers received the lump-sum payment as a substitute for the right to receive ordinary income.  Id. at n.7.

The most recent case on this issue is United States v. Maginnis, 356 F.3d 1179 (9th Cir. 2004), which involved a taxpayer who assigned to a third party his right to future lottery payments from the State of Oregon.  The Court of Appeals for the Ninth Circuit thoroughly analyzed Supreme Court precedent regarding the definition of a capital asset and concluded that under the substitute for ordinary income doctrine the taxpayer's right to the future payments was not a capital asset.  Id. at 1182.  The Court of Appeals ultimately rejected the taxpayer's argument that the right to future lottery payments is a capital asset within the meaning of sections 1221 and 1222.  Id. at 1185. In analyzing whether the right to future lottery payments was a capital asset, the Court of Appeals for the Ninth Circuit relied on Supreme Court precedent and looked at whether there was an underlying investment of capital and an accretion in value over the cost of any underlying asset held.  Id. at 1183.  The Court of Appeals concluded capital gains treatment was not appropriate because the taxpayer made no underlying investment in exchange for the right to future payments, and, because there was no underlying investment, there was no cost to the taxpayer for the right to receive the payments (i.e., the money he received for

the sale of his right did not reflect an increase of value above the cost of any underlying capital asset). Id. at 1184.

The Court of Appeals also rejected the taxpayer's argument that the substitute for ordinary income doctrine was limited to specific fact situations, none of which were present in the case. The court noted that treating the sale of a lottery right as a capital gain would reward lottery winners who elect to receive periodic payments in lieu of a direct lump-sum payment from the State and then sell that right to a third party. Id. at 1184. The court stated:

> Nothing in the Revenue Code compels the creation of such a dichotomous system for the taxation of lottery winnings. The purpose of narrowly construing the term capital asset under the substitute for ordinary income doctrine is to "protect the revenue against artful devices" that undermine the Revenue Code's standard treatment of ordinary income and capital gains. * * * That is precisely what Maginnis has attempted here. [Id. at 1184-1185.]

Finally, the Court of Appeals rejected the taxpayer's argument that capital gains treatment was appropriate because his lottery right is a debt instrument under section 1275. Id. at 1187.

Petitioners, relying on McAllister v. Commissioner, 157 F.2d 235 (2d Cir. 1946), revg. 5 T.C. 714 (1945), and Bell's Estate v. Commissioner, 137 F.2d 454 (8th Cir. 1943), revg. 46 B.T.A. 484 (1942), contend that property not within the statutory exclusions for capital assets produces capital gain on its sale. We have previously recognized that the cases cited by petitioners were

decided before relevant Supreme Court decisions applying the substitute for ordinary income doctrine.  Hrobon v. Commissioner, 41 T.C. 476, 493, 497-498 (1964).  As explained in numerous Supreme Court cases and the recent decisions discussed above, the fact that certain property is not within the statutory exclusions for capital assets does not automatically mean that the property is a capital asset.  See, e.g., Ark. Best Corp. v. Commissioner, 485 U.S. 212, 217 n.5 (1988); Commissioner v. Gillette Motor Transp., Inc., 364 U.S. 130, 134 (1960); Commissioner v. P.G. Lake, Inc., 356 U.S. 260, 265 (1958); United States v. Maginnis, supra at 1181-1182; Davis v. Commissioner, 119 T.C. at 7.  If lump-sum consideration received for the property is essentially a substitute for what would otherwise be received at a future time as ordinary income, then the consideration may not be taxed as a capital gain.  Commissioner v. P.G. Lake, Inc., supra at 265; United States v. Maginnis, supra at 1182.  The appropriate inquiry in this case is whether the $1,155,000 received for the property transferred to Singer was essentially a substitute for future payments of ordinary income.

Petitioners claim that Mr. Clopton transferred a beneficial interest in the trust, not the right to future lottery payments, and that the interest is a capital asset.  Petitioners claim that the future payments were required to be made directly to the trust, not to Singer.  Petitioners imply that this means that

despite the fact that they did not make an underlying investment in exchange for their right to future lottery payments or for the beneficial interest in the trust, capital gains treatment is appropriate.

There is no question that the lottery payments in the first instance were ordinary income.  See United States v. Maginnis, supra at 1183.  The trust was simply a conduit to facilitate the distribution of the lottery proceeds.  The character of the lottery payments as ordinary income did not change as a result of the payments being distributed through the trust.  Sec. 652(b); see also Van Buren v. Commissioner, 89 T.C. 1101, 1106 (1987); Picchione v. Commissioner, 54 T.C. 1490, 1492 n.1 (1970), affd. 440 F.2d 170 (1st Cir. 1971).  Thus, the sale of the future lottery payments to Singer lacked the requisite realization of appreciation in value accrued over a substantial period of time that is typically necessary for capital gains treatment, regardless of whether Singer bought rights to the trust distributions or direct lottery payments.  United States v. Maginnis, supra at 1184 (citing Commissioner v. Gillette Motor Transp., Inc., supra at 134).

At the time the agreement between Mr. Clopton and Singer was made, Texas law prohibited the assignment of rights to a lottery prize.  Tex. Govt. Code Ann. sec. 466.406 (Vernon 1998).  However, Texas law changed effective September 1, 1999, prior to

the issuance of the declaratory judgment assigning Mr. Clopton's beneficial interest in the trust to Singer. Id. secs. 466.406, 466.410 (Vernon Supp. 2004). The new law allows the assignment of the right to receive lottery payments to a person designated by court order, excepting only the lottery payments due within the final 2 years of the prize payment schedule. Id. sec. 466.410 (Vernon Supp. 2004).

It is not clear in this case whether, subsequent to the declaratory judgment, the lottery payments were made through the trust or directly to Singer. The payment of the lottery prize installments to the trust, as the declaratory judgment provides, is inconsistent with the sale agreements between Mr. Clopton and Singer, which provide that a court order would be obtained to direct that the lottery payments be paid directly to Singer. However, we do not find it significant whether the lottery payments were paid directly to the trust or to Singer because the trust agreement specifically provides that within 5 days of payment from the Texas Lottery Commission, the lottery proceeds shall be distributed to the beneficiaries in proportion to their respective interests.

The substance of the transfer to Singer is the right to receive future annual lottery payments of $120,000 for the years 2000 through 2019. As recently noted by the Court of Appeals for the Ninth Circuit: "The Supreme Court has narrowly construed the

term capital asset when taxpayers have made transparent attempts to transform ordinary income into capital gain in ways that undermine Congress' reasons for differentially taxing capital gains."  United States v. Maginnis, 356 F.3d at 1182 (citing Commissioner v. Gillette Motor Transp., Inc., supra at 134).

Additionally, the Court of Appeals for the Tenth Circuit has stated:

> It is well settled that the incidence of taxation depends upon the substance of a transaction; that tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title; and that the Government may look at the realities of a transaction and determine its tax consequences despite the form or fiction with which it was clothed. [Hamlin's Trust v. Commissioner, 209 F.2d 761, 764 (10th Cir. 1954) (citing Higgins v. Smith, 308 U.S. 473 (1940)), affg. 19 T.C. 718 (1953); Commissioner v. Court Holding Co., 324 U.S. 331 (1945); Jones v. Grinnell, 179 F.2d 873 (10th Cir. 1950)).]

We believe that these statements are applicable to the transfer of the future annual lottery payments to Singer.  Under the facts of the instant case, we find no meaningful distinction between the transfer of the interest in the trust and the transfer of the right to receive the lottery payments from the Texas Lottery Commission because both involve the right to receive future ordinary income and the sale to Singer did not result in an accretion in value over any cost of the property.

After reviewing pertinent caselaw, we are not persuaded that the transfer to Singer involved the sale of a capital asset. Accordingly, we hold that the lump-sum amount of $1,155,000 received by Mr. Clopton is ordinary income.[4]

Decision will be entered under Rule 155.

---

[4]We express no opinion whether a purchaser, such as Singer, of a lottery right from a lottery winner who then sells that right to a third party would receive ordinary income or capital gain on that sale. See United States v. Maginnis, 356 F.3d 1179, 1183 n.4 (9th Cir. 2004).