**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 10, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

ROGER L. WATKINS,

      Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent-Appellee.

No. 04-9016

---

**Appeal From a Decision of the**
**United States Tax Court**
**(No. 19587-02)**

---

Eric J. Zinn of Brownstein Hyatt & Farber, PC, Denver, Colorado, for Petitioner-Appellant.

Regina S. Moriarty, Attorney, Tax Division (Richard Farber, Attorney, Tax Division; and Eileen J. O'Connor, Assistant Attorney General, with her on the brief), Department of Justice, Washington, D.C., for Respondent-Appellee.

---

Before **O'BRIEN**, **SEYMOUR**, and **BALDOCK**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Taxpayer Roger L. Watkins won over $12 million in the Colorado State Lottery, which he was to receive in twenty-five annual payments. After receiving six installments, Mr. Watkins sold his interest in the remaining payments to a third party for a lump sum and claimed the sale resulted in a capital gain. The Internal Revenue Service (I.R.S.) disagreed, asserting the proceeds from the sale should be characterized as ordinary income. In subsequent litigation, the tax court agreed with the I.R.S.'s position. *See Watkins v. C.I.R.*, T.C.M. (RIA) 2004-244 (T.C. 2004). Mr. Watkins appeals, and we affirm.

# I

On May 1, 1993, Mr. Watkins won $12,358,688 from the Colorado State Lottery with a ticket he purchased for one dollar. At the time, he was married to Tammy Watkins. His prize winnings were to be distributed to him in twenty-five annual installments through an annuity purchased by the Colorado State Lottery. Mr. Watkins reported the receipt of his first six prize payments as ordinary income on his federal tax returns. In 1997, Mr. Watkins and his wife were divorced. As part of the divorce settlement, the court awarded each party a one-half interest in the future lottery payments.

In 1998, Mr. Watkins entered into a contract with Stone Street Capital, Inc. (Stone Street), agreeing to assign it his one-half interest in the remaining lottery

payments. Upon receiving a judicial order permitting the assignment, *see* COLO.

REV. STAT. § 24-35-212(1)(b), Mr. Watkins consummated the contract. In

consideration for the assignment, Mr. Watkins received $2,614,744, which

represented the discounted present value of his remaining share of the lottery

winnings. Of this amount, he gave $200,000 to a third party who provided

consulting services in connection with the sale to Stone Street. On his 1998 tax

return, Mr. Watkins reported that the lump sum from Stone Street was the result

of a sale of a capital asset worth $2,414,744 with a cost basis of zero.[1]

The I.R.S. issued a notice of deficiency to Mr. Watkins, claiming the

$2,614,744 he received from Stone Street was ordinary income, not the result of

the sale of a capital asset warranting capital gains treatment.[2] The I.R.S. did

agree, however, that the $200,000 consulting fee was allowable as a

miscellaneous itemized deduction. Mr. Watkins timely appealed to the tax court,

which ruled in favor of the I.R.S.

**II**

We exercise jurisdiction pursuant to I.R.C. § 7482(a)(1) and review the tax

---

[1] Mr. Watkins treated the $200,000 paid for the consulting services as an itemized deduction, thereby reducing the $2,616,744 amount to $2,414,744.

[2] The Internal Revenue Code generally taxes capital gains at a more favorable rate than ordinary income. *See* I.R.C. § 1(h).

court's decision "in the same manner and to the same extent as decisions of the district courts . . . tried without a jury." *Id.* We thus review legal questions *de novo* and factual questions for clear error. *IHC Health Plans, Inc. v. C.I.R.*, 325 F.3d 1188, 1193 (10th Cir. 2003); *Kurzet v. C.I.R.*, 222 F.3d 830, 833 (10th Cir. 2000). In so doing, we find no error in the tax court's ruling. Having reviewed the relevant Supreme Court, circuit court, and tax court authority, we easily conclude that Mr. Watkins' sale of his lottery payments should be characterized as producing ordinary income rather than capital gain.

A capital gain occurs when a taxpayer sells a capital asset at a profit. *See* I.R.C. § 1222(1), (3). Generally, a capital asset is defined as "property, held by the taxpayer (whether or not connected with his trade or business) . . . ." I.R.C. § 1221(a).[3] This statutory definition of property is broad, and a plain

---

[3] The relevant portion of the statute directs the following:
(a) In general.--For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include--
(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business; (3) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by--(A) a taxpayer whose personal efforts created such property, (B) in the case of a letter, memorandum, or

(continued...)

reading of its language could result in drawing within its scope all manner of property not necessarily appropriate for capital gains treatment. The Supreme Court expressed this concern in *C.I.R. v. Gillette Motor Transp., Inc.*, 364 U.S. 130 (1960), noting that "[w]hile a capital asset is defined . . . as 'property held by the taxpayer,' it is evident that not everything which can be called property in the ordinary sense and which is outside the statutory exclusions qualifies as a capital asset." *Id.* at 134. In limiting the breadth of what could conceivably receive capital gains treatment, the Court reasoned that

> the term "capital asset" is to be construed narrowly in accordance with *the purpose of Congress to afford capital-gains treatment only in situations typically involving the realization of appreciation in value accrued over a substantial*

_____

[3](...continued)
similar property, a taxpayer for whom such property was prepared or produced, or (C) a taxpayer in whose hands the basis of such property is determined, for purposes of determining gain from a sale or exchange, in whole or part by reference to the basis of such property in the hands of a taxpayer described in subparagraph (A) or (B); (4) accounts or notes receivable acquired in the ordinary course of trade or business for services rendered or from the sale of property described in paragraph (1); (5) a publication of the United States Government (including the Congressional Record) which is received from the United States Government or any agency thereof, other than by purchase at the price at which it is offered for sale to the public, and which is held by--(A) a taxpayer who so received such publication, or (B) a taxpayer in whose hands the basis of such publication is determined, for purposes of determining gain from a sale or exchange, in whole or in part by reference to the basis of such publication in the hands of a taxpayer described in subparagraph (A).
I.R.C. § 1221(a) (1986).

-5-

*period of time*, and thus to ameliorate the hardship of taxation of the entire gain in one year.

*Id.* (emphasis added).

The Court has further narrowed the scope of those gains which may be characterized as capital through its creation of the substitute-for-ordinary-income doctrine. Under this doctrine, the Court has indicated that where a lump sum payment is received in exchange "for what would otherwise be received at a future time as ordinary income," *C.I.R. v. P.G. Lake Inc.*, 356 U.S. 260, 265 (1958), capital gains treatment of the lump sum is inappropriate. This is so because the "consideration was paid for the right to receive future income, not for an increase in the value of income-producing property." *Id.* at 266. *See also United States v. Midland-Ross Corp.*, 381 U.S. 54, 57-58 (1965) (gain based on earned original issue discount from sale of promissory notes before maturity was equivalent of interest and therefore constituted ordinary income); *Hort v. C.I.R.*, 313 U.S. 28, 31 (1941) (lump sum paid for cancellation of rental payments owed under fifteen-year lease treated as ordinary income); *Freese v. United States*, 455 F.2d 1146, 1150 (10th Cir. 1972) (receipt of lump sum representing commission rights pursuant to contract not capital gain); *Holt v. C.I.R.*, 303 F.2d 687, 690-91 (9th Cir. 1962) (lump sum received in exchange for future proceeds from movies deemed ordinary income); *Dyer v. C.I.R.*, 294 F.2d 123, 126 (10th Cir. 1961) (lump sum received for mineral leasehold payments held to be ordinary income).

We glean from these cases the basic lesson that when a party exchanges for a lump sum the right to receive in the future ordinary income already earned or obtained, the amount received serves as a substitute for the ordinary income the party had the right to receive over time. The lump sum is accordingly treated as ordinary income for taxation purposes.

Two other circuit courts, as well as numerous rulings from the Tax Court, have applied this doctrine in lottery sales cases and have consistently held that a lump sum payment in exchange for future installments of lottery winnings is properly characterized as ordinary income. *See Lattera v. C.I.R.*, 437 F.3d 399 (3d Cir. 2006); *United States v. Maginnis*, 356 F.3d 1179 (9th Cir. 2004); *Wolman v. C.I.R.*, 2004 RIA TC Memo 2004-262; *Clopton v. C.I.R.*, 87 T.C.M. (CCH) 1217 (2004); *Simpson v. C.I.R.*, 85 T.C.M. (CCH) 1421 (2003); *Johns v. C.I.R.*, 85 T.C.M. (CCH) 1818 (2003); *Boehme v. C.I.R.*, 85 T.C.M. (CCH) 1039 (2003); *Davis v. C.I.R.*, 119 T.C. 1 (2002 WL 1446631). We agree.

The Third and Ninth Circuits, in invoking the substitute-for-ordinary income doctrine, outlined different methods for applying the doctrine generally while simultaneously seeking to appropriately limit its use. *See Lattera*, 437 F.3d at 405-09 (outlining a three step "family resemblance" test for application of the doctrine while noting no rule could "account for every contemplated transactional variation"); *Maginnis*, 356 F.3d at 1182-83 (applying doctrine where there has

been no underlying investment of capital and where sale of asset did not reflect accretion in value over cost of underlying asset, but acknowledging the two factors would not be dispositive in every case). The test laid out in *Maginnis* has been subject to academic criticism, *see* Matthew S. Levine, Case Comment, *Lottery Winnings as Capital Gains*, 114 YALE L.J. 195, 197-202 (2004); Thomas G. Sinclair, Comment, *Limiting the Substitute-for-Ordinary-Income Doctrine: An Analysis Through Its Most Recent Application Involving the Sale of Future Lottery Rights*, 56 S.C.L. REV. 387, 421-22 (2004); and was rejected by the court in *Lattera*, 437 F.3d at 404-05. We decline to enter the fray. While we acknowledge the importance of placing appropriate limits on when to apply the substitute-for-ordinary-income doctrine, in the instant case there is no question that what Mr. Watkins exchanged for a lump sum payment was his future right to receive set amounts of income he had essentially already obtained as a result of his lottery success. Application of the substitute-for-ordinary-income doctrine is therefore entirely proper in Mr. Watkins' case. As a consequence, we need not formulate any specific test regarding the appropriate limits of the doctrine's application.

At bottom, Mr. Watkins exchanged the future right to receive his parceled-out lottery winnings for a lump sum. Lottery winnings, whether received initially and wholly in a lump sum or in annual payments, are treated as ordinary income

under the tax code.[4]  *C.I.R. v. Groetzinger*, 480 U.S. 23, 32 n.11 (1987) (equating a state lottery with public gambling in case treating gambling earnings as ordinary income); *Maginnis*, 356 F.3d at 1183 ("Lottery prizes are treated by the tax code as gambling winnings, which are taxed as ordinary income."); *Davis*, 119 T.C. at 4 ("The parties agree that an amount received as a lottery prize constitutes ordinary income.").  All of the payments Mr. Watkins initially received in a series of annual installments represented ordinary income Mr. Watkins had already earned by virtue of his success in the lottery.  The lump sum Mr. Watkins received from Stone Street served as a substitute for the ordinary income he

---

[4]Mr. Watkins contends the one dollar he paid for the lottery ticket was a capital investment, relying on Rev. Rul. 83-130, 1982-2CB 148.  In the ruling, an individual had purchased a $100 winning raffle ticket for a home worth $100,000.  What was received in exchange for the $100 was the chance to win a valuable prize and, by implication, the purchase of the ticket was therefore not consideration for the prize itself.  *Id.* at 149.  The ruling stated that "[a] raffle is the disposal by chance of a single prize among purchasers of separate chances, and an individual buying a raffle ticket makes a wager through such purchase." *Id.*  Purchasers of raffle tickets are permitted to deduct the loss of the price of the ticket, "but only to the extent of the gains from wagering transactions."  *Id.*  The ruling held that the taxpayer who won the home would be required to include in his gross income as gambling winnings the value of the house, but he could deduct the cost of the ticket as a gambling loss.  Mr. Watkins argues that by virtue of the ruling, the I.R.S. "acknowledges that the purchase of a raffle or lottery ticket does represent an underlying investment in exchange for a right to future payments and that a return of that investment is, like any other return of capital, not subject to taxation."  Aplt. Br. at 17.  He is wrong.  As the court said in *McGinnis*, 356 F.3d at 1184, "[t]he purchase of a lottery ticket is no more an underlying investment of capital than is a dollar bet on the spin of a roulette wheel."

would have otherwise received over a period of time, and therefore was appropriately taxed as ordinary income. As in *P. G. Lake, Inc.*,

> [t]he substance of what was assigned was the right to receive future income. The substance of what was received was the present value of income which the recipient would otherwise obtain in the future. In short, consideration was paid for the right to receive future income, not for an increase in the value of the income-producing property.

356 U.S. at 266. Under these circumstances, the sale of Mr. Watkins's future lottery payments did not represent a capital gain.

We **AFFIRM** the determination of the tax court.