FILED
United States Court of Appeals
Tenth Circuit

March 27, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

SHERREL AND LESLIE STEPHEN
JONES,

      Petitioners-Appellants,

v.

                No. 08-9001

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent-Appellee.

APPEAL FROM THE UNITED STATES TAX COURT
(Case No. 20253-04)

Leslie Stephen Jones (April M. Davis, Jones, Otjen & Davis, Enid, Oklahoma, and Clarke L. Randall, Kornfield, Franklin, Renegar & Randall, Oklahoma City, Oklahoma, with him on the briefs), Jones, Otjen & Davis, Enid, Oklahoma for Petitioners-Appellants.

Patrick J. Urda (Nathan J. Hochman, Assistant Attorney General, and Richard Farber, Attorney, Tax Division, Department of Justice with him on the briefs), Attorney, Tax Division, Department of Justice, Washington, D.C. for Respondent-Appellee.

Before **TACHA**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

**BALDOCK**, Circuit Judge.

In July 2004 the Commissioner of Internal Revenue (Commissioner) issued a

notice of deficiency to Petitioners Sherrel and Leslie Stephen Jones for the years

2000 and 2001 in the amount of $14,784.99. The basis for the deficiency was the Commissioner's determination that Petitioners improperly claimed a large income tax deduction for a charitable contribution of discovery material that Leslie Stephen Jones acquired while serving as lead defense counsel in the Oklahoma City Bombing trial. Petitioners contested the deficiency notice in United States Tax Court, and now appeal the tax court's judgment upholding the Commissioner's determination. We have jurisdiction under 26 U.S.C. § 7482(a)(1). Although our rationale differs from the tax court, we affirm.

## I.

Taxpayer Leslie Stephen Jones[1] was lead defense counsel for Timothy McVeigh in the Oklahoma City Bombing trial. During the course of his representation, the Government provided Taxpayer with voluminous discovery material related to the prosecution of McVeigh. The same discovery material was furnished to the Oklahoma State Bureau of Investigation, the Oklahoma County District Attorney's Office, and counsel for McVeigh's co-defendant, Terry Nichols. The material included, *inter alia*, copies of FBI witness statements, FBI lab notes, photographs, and computer discs. After McVeigh was convicted in August 1997, Taxpayer withdrew as lead defense counsel. Subsequently, in December 1997, Taxpayer donated the discovery material to the Center for American History at the

---

[1] Because the deficiency notice was for a joint tax return, Sherrel and Leslie Stephen Jones both appeal the tax court's decision. For purposes of this opinion, however, we refer only to Leslie Stephen Jones as "Taxpayer."

University of Texas.

Prior to the donation, Taxpayer had the discovery material appraised by an expert at a value of $294,877.00. Taxpayer claimed a deduction for the material on his 1997 income tax return. The excess amount of the deduction was carried over to subsequent tax years. In 2004 the Commissioner noticed Taxpayer for income tax return deficiencies of $3,675.00 in 2000 and $11,109.99 in 2001.[2] The Commissioner informed Taxpayer that he did not "own" the donated material and, therefore, could not claim a charitable contribution deduction. Moreover, the Commissioner explained that the amount reportable as a deduction was limited to ordinary income or short-term capital income (*i.e.*, the discovery material was not a long-term capital asset). Because the material was either ordinary income or short-term capital income, the amount of the deduction was limited to Taxpayer's basis in the donated property (*i.e.*, the purchasing price of the discovery material or the amount Taxpayer invested in the discovery material). Taxpayer's basis in the discovery material was zero and, therefore, the amount he could claim as a charitable contribution was zero.

Taxpayer filed a petition in United States Tax Court, seeking a redetermination of the deficiencies. The tax court issued its opinion, first ruling that Taxpayer did not own the donated material under Oklahoma law. See United States v. Nat'l Bank

---

[2] The Commissioner's recovery of deficiencies on Taxpayer's income tax returns from 1997-1999 was barred by the statute of limitations.

of Commerce, 472 U.S. 713, 722 (1985) (noting that when applying federal tax law, state law controls the nature of the taxpayer's interest in property). In support of its decision, the tax court determined that the material was provided to Taxpayer only in his representative and agent capacity for McVeigh. Relying on precedent from jurisdictions outside Oklahoma, and the Oklahoma Rules of Professional Conduct, the tax court held that primary ownership in an attorney's case file lies with the client and not the attorney. Thus, Taxpayer did not own the donated discovery material.

The tax court also ruled, in the alternative, that if Taxpayer owned the discovery material, it was not a "capital asset," and, therefore, the amount Taxpayer could claim as a deduction was equal to his basis in the donated material. Specifically, the tax court held that the donated discovery material qualified as letters, memoranda, and similar property prepared by Taxpayer's personal efforts. Such property is excluded from the Internal Revenue Code's (IRC) definition of "capital asset," 26 U.S.C. § 1221(a)(3)(A), and the deduction value is limited to Taxpayer's basis in the property. Because Taxpayer's basis was zero, the tax court held he could not claim a charitable contribution deduction.

## II.

We review the tax court's decision in the same manner as we review a district court decision tried without a jury. See Watkins v. Comm'r, 447 F.3d 1269, 1271 (10th Cir. 2006). We review legal questions de novo and factual questions for clear

4

error.  See id.  As noted, the tax court held that Taxpayer was not entitled to claim a deduction on the donation of the discovery material for two reasons:  (1) Taxpayer did not own the discovery material, and (2) the discovery material was not a capital asset.  Because we hold that the discovery material is not a capital asset, we need not decide whether Taxpayer owned the discovery material under Oklahoma law.  As the following discussion demonstrates, however, our rationale for determining that the discovery material is not a capital asset differs from that of the tax court.

A.

The value of a charitable contribution of property, and thus the value that can be deducted from an income tax return, is reduced by "the amount of gain which would *not have been long term capital gain* if the property had been sold by the taxpayer at its fair market value."  26 U.S.C. § 170(e)(1)(A) (emphasis added).  Thus, unless the property is a capital asset providing long term capital gain, the property qualifies as ordinary income and a taxpayer's deduction is limited to his cost or basis in the property.  See Maniscalco v. Comm'r, 632 F.2d 6, 8 (6th Cir. 1980) (noting that the allowable deduction for ordinary income property is limited to the donor's cost basis in such property); Glen v. Comm'r, 79 T.C. 208, 211-12 (1982) (recognizing that the effect of § 170(e)(1)(A) is to limit the allowable deduction for the donation of a non-capital asset to the taxpayer's cost or basis in the property).  In other words, if a Taxpayer has no basis in a piece of property, the gross and net return on a hypothetical sale of that property would be the same, *i.e.*,

5

the full sale price. Thus, unless the property was a long term capital asset, § 170(e)(1)(A) would require that the deduction for donating that property be reduced by the property's *entire* value—leaving the taxpayer with no deduction at all.

Two requirements must be met to claim a deduction for long term capital gain. First, a taxpayer must prove he has owned the donated property for more than one year.[3] See 26 U.S.C. § 1222(3) (defining "long term capital gain" as the "gain from the sale or exchange of a capital asset held for more than [one] year"). Second, the donated property must meet the statutory definition of a capital asset. See 26 U.S.C. § 1221(a) (defining "capital asset" as "property held by the taxpayer (whether or not connected with his trade or business)"). Section 1221 of the IRC excludes five specific classes of property from its broad definition of capital asset. See Arkansas Best Corp. v. Comm'r, 485 U.S. 212, 215-16 (1988). The only exclusion relevant to our inquiry is the following:

> a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by–
> (A) a taxpayer whose personal efforts created such property,
> (B) in the case of a letter, memorandum, or similar property, a taxpayer for whom such property was prepared or produced, or
> (C) a taxpayer in whose hands the basis of such property is determined, for purposes of determining gain from a sale or exchange, in whole or part by reference to the basis of such property in the hands of a taxpayer described in subparagraph (A)

---

[3] Because we hold that the donated discovery material is *not* a capital asset, we need not decide whether Taxpayer (1) owned the discovery material, and (2) whether he owned the material for over one year.

6

or (B).

26 U.S.C. § 1221(a)(3).

As noted, the tax court ruled that if Taxpayer owned the discovery material, it was excluded under the IRC's definition of capital asset pursuant to 26 U.S.C. § 1221(a)(3)(A). Specifically, the tax court held that the discovery material qualified as "letters, memoranda, or similar property created by the taxpayer's own efforts." Jones v. Comm'r, 129 T.C. 146, 159 (2007). The record, however, clearly demonstrates—and the Commissioner appears to concede—that the property which Taxpayer claimed as a charitable contribution was *not* created by his own personal efforts. Thus, we believe the tax court incorrectly applied § 1221(a)(3)(A) to the discovery material.[4] Nevertheless, for the reasons articulated below, we hold that § 1221(a)(3)(B) encompasses the discovery material donated by Taxpayer, thereby excluding it from the IRC's definition of capital asset. Accordingly, we affirm the tax court's ruling, albeit on alternative grounds. See Combs v. Shelter Mut. Ins. Co., 551 F.3d 991, 996 (10th Cir. 2008) (noting that we are free to affirm on any grounds with a sufficient record to permit conclusions of law, even on grounds not relied upon by the trial court).

[4] The tax court's primary ruling that Taxpayer did not own the discovery material seems to have confined its interpretation of § 1221(a)(3). Thus, the tax court determined that the only way Taxpayer could have owned the donated materials was if the materials constituted attorney work product. Because we find the discovery material unambiguously falls under § 1221(a)(3)(B)'s exception to capital asset, we need not reach the question of Taxpayer's ownership interest in the discovery material.

7

B.

Under § 1221(a)(3)(B) of the IRC, property described as a "letter, memorandum, or similar property" that is "prepared or produced" for a taxpayer, is excluded from the IRC's definition of "capital asset." 26 U.S.C. § 1221(a)(3)(B). Thus, the hypothetical sale of such property provides only ordinary income—meaning the allowable income tax deduction for donating the item to charity is limited to the taxpayer's basis in the property. See Maniscalco, 632 F.2d at 8. Because Taxpayer's lack of basis in the property here is undisputed, the central question before us is whether the discovery material qualifies as "letter[s], memorand[a], or similar property, [held by] a taxpayer for whom such property was prepared or produced." 26 U.S.C. § 1221(a)(3)(B).[5] If the answer is yes, Taxpayer cannot claim an income tax deduction for donating the discovery material.

The starting point for interpreting § 1221(a)(3)(B) is the statute's plain language. See Chicksaw Nation v. United States, 208 F.3d 871, 876 (10th Cir. 2000). The words of the statute must be construed in their ordinary and everyday sense. See id. "If the terms of the statute are clear and unambiguous, they are controlling absent rare and exceptional circumstances." Id.

The items Taxpayer donated consisted of copies of FBI memoranda, lab reports, computer discs, and photographs—all containing information related to the

---

[5] We note that the Commissioner originally argued before the tax court that the discovery material falls within the § 1221(a)(3)(B) exception. The Commissioner reasserts this argument on appeal.

8

investigation and prosecution of Timothy McVeigh. In addition, the discovery material included letters to Taxpayer from the FBI and the Department of Justice explaining the contents of the material. We have no trouble concluding, therefore, nor does Taxpayer seriously contest, that the discovery material is properly characterized as "letter[s], memorand[a], or similar property." 26 U.S.C. § 1221(a)(3)(B).

We next consider whether the material was "prepared or produced" for Taxpayer. The dictionary is a helpful basis for determining the plain and ordinary meaning of a statute's terms. See Chicksaw, 208 F.3d at 876. Webster defines "prepare" as "to make ready beforehand for some purpose, use, or activity." Merriam-Webster Online Dictionary (2009) (Webster). Similarly, the Oxford English Dictionary defines "prepare" as "[t]o bring into a suitable condition for some future action or purpose; to make ready in advance; to fit out, equip." Oxford English Dictionary Online (2009) (Oxford). Webster defines "produce" as "to offer to view or notice." Webster, supra. Likewise, Oxford defines "produce" as "[t]o bring forward or out, to present to view or notice; to show or provide (something) for consideration, inspection, or use; to exhibit." Oxford, supra.

Taxpayer argues that the discovery material does not fall under § 1221(a)(3)(B) because it was not produced specifically for him. Admittedly, the discovery material was not originally created for Taxpayer's benefit. Rather, the Government first compiled the material to assist in its investigation and prosecution

9

of McVeigh. Nevertheless, we believe the discovery material falls under 28 U.S.C. § 1221(a)(3)(B)'s plain language. The Government made numerous copies of memoranda, investigative reports, photographs, etc., specifically for Taxpayer. Subsequently, they organized and categorized all the material for the benefit of Taxpayer and his client. The Government then placed the discovery material in banker's boxes and prepared letters for Taxpayer explaining the contents of each box. Clearly, the discovery material was "br[ought] into a suitable condition," Oxford, supra, and "made ready" for Taxpayer's future use. Webster, supra. The Government then produced the discovery material for Taxpayer, *i.e.*, the Government "offered," Webster, supra, or "present[ed]" the material to Taxpayer for his "view," "consideration," and "use" in representing McVeigh. Oxford, supra.

We note that the discovery material was provided to Taxpayer only because of his position as lead counsel for McVeigh, and it was the type of material typically produced for defense counsel in the course of a criminal trial. See Morrison v. Comm'r, 71 T.C. 683, 689 (1979) (holding that letters, memoranda, and similar property prepared by third parties and delivered to a Congressman were prepared or produced for a legislator as part of his duties, and, therefore, were excluded from the IRC's definition of capital asset). Further, while not critical to the outcome here, our conclusion is supported by the Supreme Court's suggestion that the IRC's capital asset exclusions should be construed broadly. See Corn Products Refining Co. v. Comm'r, 350 U.S. 46, 52 (1955) (indicating that the exclusions to the definition of

10

capital asset should be interpreted broadly); see also Arkansas Best, 485 U.S. at 223 (recognizing that Corn Products involved a broad reading of the § 1221(a)(1) inventory exception to the definition of capital asset); Watkins, 447 F.3d at 1271-72 (noting courts' reticence in treating property as a capital asset when it is more properly characterized as ordinary income).

Accordingly, we hold that the discovery material donated by Taxpayer falls within the plain language of 26 U.S.C. § 1221(a)(3)(B)—thereby limiting the charitable deduction amount to Taxpayer's basis in the property. See Morrison, 71 T.C. at 689 (holding that a Congressman's charitable contribution deduction for letters, memoranda, and similar property provided to him by third parties during the course of his legislative duties was limited to his basis in the property). Because Taxpayer had no basis in the discovery material, he is precluded from claiming any income tax deduction for his charitable donation.

For the foregoing reasons, the judgment of the tax court is AFFIRMED.