Laurance F. Magness, Jr., and Dolores M. Magness v. Commissioner.
Magness v. Commissioner
Docket No. 4096-63.
United States Tax Court
T.C. Memo 1965-260; 1965 Tax Ct. Memo LEXIS 70; 24 T.C.M. (CCH) 1413; T.C.M. (RIA) 65260; September 30, 1965
*70 Held, that the petitioners have failed to show error in the respondent's determination of the basis used by him in computing gain upon the sale by them of stock which had been acquired by gift. Laurance F. Magness, Jr., pro se, Freeland, Baltimore, Md., Francis O. McDermott, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1960 in the amount of $575.98. The parties having reached agreement as to two of the issues raised by the pleadings, the only issue remaining for decision is whether, in computing petitioners' gain or loss on the sale of stock received by gift, the respondent used the proper basis. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioners are husband and wife residing at Freeland, Maryland. They filed a joint Federal income tax return for the taxable year 1960 with the district director of internal revenue at Baltimore, Maryland. The petitioner Laurance F. Magness, Jr., is a self-employed poultry farmer and is employed by the Department of Education of Towson, Maryland, as a school bus operator. *71 In 1959 and 1960 Laurance F. Magness, Sr., and his wife Mabel, parents of the petitioner Laurance F. Magness, Jr., made gifts, hereinafter described, to the petitioners of stock of three corporations, namely, Fidelity and Deposit Company of Maryland, Baltimore Gas and Electric Company, and United States Fidelity and Guaranty Company. On August 30, 1959, Mabel G. Magness made a gift to the petitioner Laurance F. Magness, Jr., of 6 shares of stock of Fidelity and Deposit Company of Maryland. At the time of the gift she owned 76 shares of stock of that corporation which had been acquired by her on the dates and in the manner set forth below: Balance
No. of
of Shares
Date
Transaction
Shares
on Hand
1/ 5/39
Purchase
3
3
3/31/49
Split 2 for 1
6
6
3/31/49
Stock Dividend
1
7
4/19/49
Purchase
1
8
5/ 3/49
Purchase
6
14
7/11/49
Purchase
9
23
3/ 1/54
Stock Split 33 1/3%
5
28
4/23/54
Purchase
12
40
5/18/54
Purchase
1
41
6/30/59
Split 2 for 1
20
61
6/30/59
Stock Dividend 12 1/2%
5
66
7/31/59
Purchase
1
67
8/12/59
Purchase
9
76
Total
76 The purchase price of the 3 shares purchased in 1939 was $119 per share, or a total of $357. The additional purchases were made pursuant to the exercise of stock rights issued by the company. On November 13, 1959, Laurance *72 F. Magness, Sr., made a gift to the petitioner Dolores M. Magness of 100 shares of stock of Baltimore Gas and Electric Company. At the time of the gift he owned 612 shares which had been acquired on the dates and in the manner set forth below: Cost of
Balance
Shares
of
No. of
Pur-
Shares
Date
Transaction
Shares
chased
on Hand
1/26/50
Purchase
80
$6,070
80
4/ 1/50
Split 3 for 1
160
240
7/ 1/53
Purchase
40
920
280
6/22/54
Purchase
28
$ 847
308
4/ 2/57
Purchase
28
868
336 *
11/13/59
Split 2 for 1
306
612
On November 20, 1959, Mabel G. Magness made a gift to the petitioner Laurance F. Magness, Jr., of 14 shares of stock of United States Fidelity and Guaranty Company. [1] *74 On January 20, 1960, she made a gift to him of 86 additional shares of stock of such corporation, and on February 29, 1960, she made a gift to the petitioner Dolores M. Magness of 80 shares of stock of the same corporation. Mabel G. Magness had acquired some of her stock of United States Fidelity and Guaranty Company by purchase and some by distribution to her as the income beneficiary of a testamentary trust established by her father, Edward J. Gallagher, deceased. When such trust *73 was set up on October 10, 1937, it received from the estate 1,400 shares of United States Fidelity and Guaranty Company stock which had been valued for estate tax purposes at $3 1/8 per share, or a total of $4,375. The trust purchased 20 additional shares of such stock in January 1948, for an undisclosed amount. From time to time the trust received stock dividends with respect to such stock. The trustee determined that under the law of Maryland such stock dividends, for trust accounting purposes, constituted income, rather than principal, of the trust, and accordingly currently distributed such stock dividends to Mabel G. Magness as the income beneficiary. In September 1959, the United States Fidelity and Guaranty Company stock was split two for one, as a result of which the trust thereafter held as corpus 2,840 shares, which it has retained. The following tabulation shows the stock of United States Fidelity and Guaranty Company which Mabel G. Magness acquired by purchase and the stock which she acquired by distribution from the Edward J. Gallagher trust: Total
Cost of
No. of
Shares
Shares
Pur-
Date
Transaction
Acquired
chased
Feb. 1948
Purchase
5
$ 238.75
3/ 8/50
Distribution from Edward J. Gallagher trust
142
5/26/53
Distribution from Edward J. Gallagher trust
142
5/ 7/54
Distribution from Edward J. Gallagher trust
142
5/15/55
Distribution from Edward J. Gallagher trust
284
11/18/57
Purchase
27
1,188.00
12/18/57
Purchase
17
748.00
12/ 1/59
Distribution from Edward J. Gallagher trust
284
Total
1,043 The purchases made in 1957 were made pursuant to the exercise of stock rights. In addition to the above shares of United States Fidelity and Guaranty Company, Mabel G. Magness also received stock dividends with respect to the shares which she held in her own name. Also, the stock which she held on September 3, 1959, was split two for one. In 1960 the petitioners sold all of the stock of the above 3 corporations which they had received by gift from Laurance F. Magness, Sr., and Mabel G. Magness. They received $300 for the Fidelity and Deposit Company of Maryland stock; $2,450 for the Baltimore Gas & Electric Company stock; and $6,330 for the United States Fidelity and Guaranty Company stock. In their joint income tax return for that year they reported gains and losses as shown in the following tabulation, using as the bases amounts which they determined represented the fair market value of the shares at the times they acquired the stock by gift: Gross
Cost or
No. of
Date
Date
Sales
Other
Expense
Gain or
Shares
Acquired
Sold
Price
Basis
of Sale
Loss
Fidelity &
6
8/30/59
2/ 1/60
$ 300.00
$ 315.00
$ 7.27
[-)22.27
Deposit
Baltimore Gas &
100
11/13/59
2/ 3/60
2,450.00
2,500.00
36.26
(-)86.26
Electric
U.S.F. & G.
14
11/20/59
2/ 3/60
483.00
476.00
10.03
(-) 3.03
U.S.F. & G.
86
1/20/60
2/ 3/60
2,967.00
2,924.00
33.04
+ 9.96
U.S.F. & G.
80
2/29/60
3/14/60
2,880.00
2,840.00
32.71
+ 7.29
*75 In the notice of deficiency the respondent determined that the petitioners had gains upon the sales of the stock, stating: It is held that the basis of the common stocks of U.S.F. & G. Co., Baltimore Gas and Electric Co., and Fidelity & Deposit Co. of Maryland which were acquired by gift from Mabel G. Magness, is the basis in the hands of the donor under Section 1015(a) of the Internal Revenue Code of 1954. The respondent's computation of the gains was as follows: No. of
Selling
Total
Expenses
Gain
Name of Stock
Shares
Price
Basis
of Sale
Realized
Fidelity & Deposit Co. of
6
$ 300
$ 212.58
$ 7.27
$ 80.15
Maryland
Baltimore Gas and Electric
100
2,450
1,264.50
36.26
1,149.24
Company
United States Fidelity & Guaranty
180
6,330
90.94
75.78
6,163.28
Company
Opinion The petitioners contend that the proper basis to be used for the calculation of gain or loss upon the sale by them of the stock in question is the fair market value of such stock at the time it was received by them by gift. In their return the amounts which they used as basis purported to represent such fair market value. The respondent determined, and contends, that the proper basis to be used is the basis in the hands of the donors. In support of their contention, *76 the petitioners refer to certain gift tax provisions, namely, section 2503(b) of the Internal Revenue Code of 1954 which provides that in the case of gifts made during the calendar year 1955 and subsequent calendar years to any person the first $3,000 of such gifts to such person shall not be included in the total amount of gifts made during that year for the purpose of computing the amount of taxable gifts made during that calendar year, and section 2513(a) which provides that a gift made by one spouse to any person other than his spouse should be considered as having been made one-half by him and one-half by his spouse, and state that no one gift to them exceeded $3,000 in money or value. They also refer to section 102(a) of the Internal Revenue Code of 1954 which provides that, for income tax purposes, "Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance." The substance of their contention is that in view of these statutory provisions the value of the stock at the time received by them by gift should be recovered tax free, and that to accomplish this the basis to be used in the computation of any gain or loss upon the disposition *77 by them of the stock is the fair market value at the time of gift. The petitioners are in error in their view of the effect of the cited statutory provisions. The fact that a particular gift is excluded from taxable gifts, for gift tax purposes, has no bearing upon its treatment under the income tax provisions of the Code. In determining the basis for computing gain or loss upon the disposition of property acquired by gift, we must look only to the provisions of the statute imposing the income tax. Section 102(a) of the Code, although it provides that no income is recognized upon the receipt of property by gift, does not mean that upon the disposition of property acquired by gift the donee is permitted to recover tax-free the fair market value of the property at the date of gift. Congress has specifically provided the basis to be used in the computation of income derived upon any disposition of property acquired by gift. Section 1015(a) of the Code [2] *79 provides that if the property was acquired by gift the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis is greater than the fair *78 market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. Thus, the provisions of section 1015(a) of the Code preclude the view which the petitioners advance with respect to the effect of section 102(a). [3] *80 Accordingly, *81 we reject the contention of the petitioners that the proper basis is the fair market value of the stock at the time it was received by them by gift. The proper basis to be used for the computation of gain is the basis that the stock had in the hand of the donors or the last preceding owner by whom it was not acquired by gift, and the proper basis for the computation of loss is such basis or the value of the property at the time of the gift, whichever is the lesser. [4]
The petitioners take the position that, in any event, the amounts determined by the respondent as basis are erroneous. The respondent's determination is presumed to be correct and the taxpayer has the burden of proving it to be wrong. Welch v. Helvering, 290 U.S. 111, and Burnet v. Houston, 283 U.S. 223. The six shares of stock of Fidelity and Deposit Company of Maryland were acquired by gift from *82 Mabel G. Magness, and hence the basis of such six shares in the hands of the petitioners for purposes of computing gain is the same as the basis in her hands. The evidence shows that Mabel G. Magness had originally purchased 3 shares of such stock in 1939 for $357. She also later acquired, prior to the date of the gift, many other shares, some by stock splits and stock dividends, and some by purchase. At the time of the gift she owned 76 shares. Laurance F. Magness, Sr., testified that the additional purchases of stock, shown in the Findings of Fact, were made pursuant to the exercise of stock rights, and we have so found as a fact. It appears that all the stock involved was common stock of the corporation and that any stock dividends or stock purchased pursuant to rights was also common stock. The respondent so determined in the notice of deficiency and there is no evidence to the contrary. Therefore, any stock received as stock dividends or any stock rights received, as well as any stock received through stock splits, constituted mere dilution of the existing shares, which did not result in the receipt of taxable income. Eisner v. Macomber, 252 U.S. 189. See also section 305(a) of the Internal Revenue Code of 1954. *83 [5] Under section 307 of the Internal Revenue Code of 1954, [6] *84 and the regulations promulgated thereunder, [7] *85 the basis of the old stock is properly allocable between the old stock and the new stock or stock rights in proportion to the fair market value of each on the date of distribution, unless, in the case of stock rights, the fair market value thereof is less than 15% of the fair market value of the old stock, in which case the basis of such rights is zero, unless an election is made to allocate basis. We do not know whether any election was made. See also section 113(a)(19) of the Internal Revenue Code of 1939 (referred to in section 1052 of the 1954 Code) and section 39.113(a)(19) of Regulations 118 promulgated thereunder which provide for an allocation in all events. The evidence does not show whether the 6 *86 shares of stock which were given by Mable G. Magness to her son consisted of the original stock which she had bought, as proliferated by stock dividends and stock splits, or whether it consisted of stock which had been acquired pursuant to the exercise of stock rights. In such circumstances the general rule is that the first stock disposed of is charged against the earliest acquisition of stock. [8] *87 But whatever the source of these particular 6 shares the basis would be affected by any allocation of basis which may have been required as a result of the purchase of stock pursuant to stock rights. From the record we cannot find the fair market value of the stock at the time of distribution of any rights, the fair market value of the rights, and the amounts required to be paid as cost of the new stock upon the exercise of the rights. Under the circumstances the petitioners have failed to show that the basis determined by the respondent for the computation of gain upon the disposition by the petitioners of the 6 shares of stock of Fidelity and Deposit Company of Maryland is erroneous, and we therefore approve the respondent's determination in this respect. The 100 shares of stock of Baltimore Gas and Electric Company was acquired by the petitioner Dolores M. Magness by gift from Laurance F. Magness, Sr. in 1959. [9] In 1950 Laurance F. Magness, Sr. had purchased 80 shares of Baltimore Gas and Electric Company stock for $6,070, and in the *88 same year there was a three for one stock split, leaving him with 240 shares on hand. Thereafter there were additional purchases and a sale of 30 shares, and then in 1959 the stock was split two for one. There is no evidence to identify the lot from which the stock was sold in 1957 or the lot from which the stock was given to the petitioner Dolores M. Magness. In such circumstances, the stock sold and the stock given is to be charged against the earliest lot acquired by Laurance F. Magness, Sr. See section 1.1012-1(c) of the Income Tax Regulations set forth in Footnote No. 8, supra. The first lot of 80 shares of Baltimore Gas and Electric Company stock was purchased in 1950, and was proliferated, by a stock split in the same year, to 240 shares. Of such 240 shares 30, the allocated basis of which *89 would be $758.75, were sold in 1957, leaving 210 shares with a basis of $5,311.25. These 210 shares were split two for one in 1959, resulting in a holding of 420 shares having a basis of $5,311.25. Accordingly, the 100 shares which Laurance F. Magness, Sr. gave to his daughter-in-law in 1959 had a basis in his hands, and hence in the petitioners' hands, of $12.645 per share, or a total basis of $1,264.50, as determined by the respondent. We approve the respondent's determination with respect to the basis of this stock. The 180 shares of stock of United States Fidelity and Guaranty Company was acquired by the petitioners from Mabel G. Magness by three separate gifts made on November 20, 1959, January 20, 1960, and February 29, 1960. Mabel G. Magness had acquired her United States Fidelity and Guaranty Company stock in various ways. She had received 526 shares as distributions from the Edward J. Gallagher trust, a testamentary trust set up pursuant to the will of her father. The trust had originally acquired 1,400 shares of such stock from the estate of Edward J. Gallagher, which had a basis in the hands of the trust of $3 1/8 per share (or a total of $4,375), the fair market value at *90 the date of the decedent's death as established for purposes of the estate tax. See section 1014 of the Internal Revenue Code of 1954. The trust had also purchased 20 shares of such stock for an undisclosed amount. The 1,420 shares of stock were proliferated by stock dividends and a stock split of two for one. The stock received by the trust was common stock on common stock which, as pointed out hereinabove, did not constitute taxable income to the trust. The trust treated the stock dividends which it received as being income, for trust accounting purposes under the law of Maryland, rather than corpus of the trust, and accordingly distributed such dividends to Mabel G. Magness as the income beneficiary of the trust. [10] Certainly the stock so distributed to Mabel G. Magness after the enactment of the Internal Revenue Code of 1954 would have the same character in her hands as it did in the hands of the trust, constituting a nontaxable dividend. Sections 652(b) and 662(b) of the Internal Revenue Code of 1954, and sections 1.652(b)-1 and 1.662(b)-1 of the Income Tax Regulations. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. A197, and S. Rept. No. 1622, 83d Cong., 2d Sess., p. 346. The *91 basis of such stock in her hands would be determined by reference to the fair market value of the 1,400 shares at the date of the decedent's death (section 1014 of the 1954 Code and section 1.1014-4 of the Income Tax Regulations) and by reference to the cost to the trust of the additional 20 shares purchased by the trust. [11]
Mabel G. Magness had also purchased 5 shares of stock in February 1948, for $238.75 and 44 shares in 1957 for $1,936. The testimony of Laurance F. Magness, Sr., indicates that the 44 shares were purchased pursuant to the exercise of stock rights, and we have so found as a fact. We do not know the value of the stock in respect of which the rights were issued or the value of the rights and accordingly do not know whether section 307(b) *92 of the 1954 Code had any application or, if it did, whether an election was made pursuant thereto. Thus, it would not be possible on the record to determine the basis of such stock in her hands. In addition, Mabel G. Magness also received stock dividends with respect to the shares which she held in her own name. And the stock which she held in her own name was split two for one in September 1959. The evidence does not show precisely how many shares Mabel G. Magness had at the time she made the gifts to the petitioners in late 1959 and early 1960. Laurance F. Magness, Sr., testified that on November 20, 1959, the number of shares on hand was approximately 1,233. It is obvious from the record that if Mabel G. Magness had retained all the shares which she had acquired by distribution from the trust, by purchase, and by way of stock dividends and stock splits, she would have had on hand substantially more shares at November 20, 1959, than 1,233. This would seem to indicate that some of the stock had been disposed of by her prior to the time the gifts were made, and there is no showing which stock was disposed of. Thus, we do not know whether the gift of 180 shares of United States Fidelity *93 and Guaranty stock to the petitioners was made by Mabel G. Magness in whole from the stock which she had received by distribution from the trust, or in part from that source and in part from stock which she had originally purchased or stock which she had acquired as stock dividends on stock held in her name, or from stock acquired by the exercise of stock rights. But, even if the source of the gift stock were shown, or if the first-in-first-out rule were employed, it would not be possible, for lack of evidence as pointed out above, to determine the basis of the 180 shares donated. And it may be added that neither at the hearing nor on brief have the petitioners attempted to trace the source of the 180 shares donated. Accordingly, we hold that the petitioners have failed to show that the respondent's determination of the basis of the 180 shares donated was erroneous, and we therefore approve his determination. Decision will be entered for the respondent. Footnotes
*. On August 1, 1958, there were sold 30 shares, leaving a balance of 306 on hand.↩
1. The references are to common stock, the only class of stock which United States Fidelity and Guaranty had outstanding at any time material herein.
2. Section 1015(a) of the Code provides as follows: Gifts After December 31, 1920. - If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period before the date of the gift as provided in section 1016) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donee, the Secretary or his delegate shall if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Secretary or his delegate finds it impossible to obtain such facts, the basis in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Secretary or his delegate as of the date or approximate date at which, according to the best information that the Secretary or his delegate is able to obtain, such property was acquired by such donor or last preceding owner. 3. In this connection it should be pointed out that the provision that the basis of property acquired by gift should be the same as that which it would have in the hands of the donor or the last preceding owner by whom it was not acquired by gift, first appeared in section 202(a)(2) of the Revenue Act of 1921, and that it was enacted specifically for the purpose of obviating the contention here made by the petitioners with respect to basis. In the report of the Committee on Finance (S. Rept. No. 275, 67th Cong., 1st Sess.), it is stated at page 10 with respect to the enactment of section 202(a)(2) of the Revenue Act of 1921: The special rules embodied in existing law with respect to property which should be included in the inventory, and property acquired by bequest, devise, or inheritance are in substance preserved. An essential change, however, is made in the case of property acquired by gift. No explicit rule is found in the present statute for determining gain or loss resulting from the sale of such property, but the Treasury Department has held that the proper basis for such determination is the fair market price or value of such property at the time of its acquisition by the donee. This rule has been the source of serious abuse. Taxpayers who have property the value of which has increased, give such property to wives or relatives, by whom it may be sold without taxation of the increase in value which took place while the property was owned by the donor. The proposed bill, in paragraph (2) of subdivision (a), provides a new and just rule, namely, that in the case of property acquired by gift after December 31, 1920, the basis for computing gain or loss is the same as that which it would have in the hands of the donor or the last preceding owner by whom it was not acquired by gift. This means that if the property cost the donor $50, and at the time it was given to the donee it was worth $100, for which amount it is sold by the donee, the income of the donee would be $50 instead of nothing, as under the present law. * * *
4. It may be added that although section 1015(d)(1)↩ of the Code provides that the basis of property acquired by gift shall be increased by the amount of gift tax paid with respect to the gift, such provision has no application here. There is no contention that any gift tax was paid with respect to any of the gifts here involved.
5. Section 305(a) provides as follows: General Rule. - Except as provided in subsection (b), gross income does not include the amount of any distribution made by a corporation to its shareholders, with respect to the stock of such corporation, in its stock or in rights to acquire its stock. ↩
6. Section 307 provides in part as follows: (a) General Rule. - If a shareholder in a corporation receives its stock or rights to acquire its stock (referred to in this subsection as "new stock") in a distribution to which section 305(a) applies, then the basis of such new stock and of the stock with respect to which it is distributed (referred to in this section as "old stock"), respectively, shall, in the shareholder's hands, be determined by allocating between the old stock and the new stock the adjusted basis of the old stock. Such allocation shall be made under regulations prescribed by the Secretary or his delegate. (b) Exception for Certain Stock Rights. - (1) In General. - If - (A) a corporation distributes rights to acquire its stock to a shareholder in a distribution to which section 305(a) applies, and (B) the fair market value of such rights at the time of the distribution is less than 15 percent of the fair market value of the old stock at such time, then subsection (a) shall not apply and the basis of such rights shall be zero, unless the taxpayer elects under paragraph (2) of this subsection to determine the basis of the old stock and of the stock rights under the method of allocation provided in subsection (a). ↩
7. Section 1.307-1(a) of the Income Tax Regulations provides as follows: If a shareholder receives stock or stock rights as a distribution on stock previously held and under section 305 such distribution is not includible in gross income then, except as provided in section 307(b) and § 1.307-2, the basis of the stock with respect to which the distribution was made shall be allocated between the old and new stocks or rights in proportion to the fair market values of each on the date of distribution. If a shareholder receives stock or stock rights as a distribution on stock previously held and pursuant to section 305 part of the distribution is not includible in gross income, then (except as provided in section 307(b)↩ and § 1.307-2) the basis of the stock with respect to which the distribution is made shall be allocated between (1) the old stock and (2) that part of the new stock or rights which is not includible in gross income, in proportion to the fair market values of each on the date of distribution. The date of distribution in each case shall be the date the stock or the rights are distributed to the stockholder and not the record date. The general rule will apply with respect to stock rights only if such rights are exercised or sold.
8. Section 1.1012-1(c) of the Income Tax Regulationsprovides as follows: Sale of stock. - (1) in general. If shares of stock in a corporation are sold or transferred by a taxpayer who purchased or acquired lots of stock on different dates or at different prices, and the lot from which the stock was sold or transferred cannot be adequately identified, the stock sold or transferred shall be charged against the earliest of such lots purchased or acquired in order to determine the cost or other basis of such stock and in order to determine the holding period of such stock for purposes of subchapter P, chapter 1 of the Code. * * * The above provision, constituting the "first-in-first-out" rule, has appeared in substantially the same form in all the regulations since Regulations 33, Article 4, under the Revenue Act of 1916, as amended by the Revenue Act of 1917. Such rule has been specifically approved by the Supreme Court in Helvering v. Campbell, 313 U.S. 15↩.
9. It was stipulated that Laurance F. Magness, Sr., made the gift. The petitioners maintain, contrary to the stipulation, that the stock was in reality owned by Mabel G. Magness, and that she made the gift, and some of the evidence in the record would support this view. However, for present purposes it is immaterial whether the gift was made by Laurance F. Magness, Sr., or by Mabel G. Magness.↩
10. However, a representative of the trust company, which acted as trustee, testified that the distributions were not considered or reported in the Federal income tax returns of the trust as constituting taxable income. ↩
11. Under the circumstances the fact that Mabel G. Magness may have treated these distributions as taxable income, which some of the testimony of Laurance F. Magness, Sr., seems to indicate, would not alter this result.↩