T.C. Memo. 2009-182

UNITED STATES TAX COURT

SYDELL L. MILLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16012-08.                    Filed August 10, 2009.

<u>David J. Fischer</u>, <u>Hewitt B. Shaw, Jr.</u>, and <u>Kenneth J. Kies</u>,
for petitioner.

<u>Dennis M. Kelly</u>, for respondent.

MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  This partner-level matter is before the
Court on respondent's motion to dismiss for lack of jurisdiction
and involves the validity of a deficiency notice under the
partnership provisions of the Tax Equity and Fiscal
Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402, 96

Stat. 648.  Respondent issued petitioner a deficiency notice for 1999, 2000, and 2001 (years at issue) on the same day he issued a notice of final partnership administrative adjustment (FPAA) to SLM Ltd. of Ohio (the partnership) for 1999.  In the deficiency notice respondent determined a $3,846,628 deficiency in petitioner's Federal income tax for 1999, a $19,091,479 deficiency for 2000, and a $13,941,030 deficiency for 2001.  Respondent also determined accuracy-related penalties under section 6662[1] of $769,326 for 1999, $3,818,296 for 2000, and $2,788,206 for 2001.  The deficiencies and penalties stem from adjustments to petitioner's capital gain income and itemized deductions[2] for the years at issue.  The alleged capital gain income is attributable to cash distributions from the Sydell Miller 1999 Charitable Remainder Annuity Trust (Miller CRAT), a limited partner of the partnership.

The sole issue for decision is whether we lack jurisdiction to redetermine the deficiencies and penalties at issue because the deficiency notice is invalid.  We hold that the notice is invalid because it adjusts affected items that cannot be

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated.

[2]The adjustments to itemized deductions are purely computational and depend on the primary adjustment to petitioner's capital gain income.

litigated until the conclusion of the ongoing partnership-level proceeding. Accordingly, we shall grant respondent's motion.

## Background

The facts we recite are uncontested facts admitted in the petition, respondent's motion, petitioner's objection to respondent's motion, or the exhibits attached to these documents. Petitioner resided in Florida at the time she filed the petition.

Petitioner owned three million shares of Bristol-Myers Squibb stock (BMY stock) directly or indirectly through her wholly owned S corporation, Nevadamax, Inc. (Nevadamax). Petitioner transferred her BMY stock to the partnership in exchange for a 99-percent limited partnership interest and a 0.6-percent general partnership interest. Nevadamax, in turn, transferred its BMY stock to the partnership for a 0.4-percent limited partnership interest. Petitioner formed the Miller CRAT four days later and contributed her 99-percent limited partnership interest to the Miller CRAT. Petitioner was the term beneficiary of the Miller CRAT and was entitled to monthly distributions (CRAT distributions) until the CRAT terminated in 2001.

The day after transferring her limited partnership interest to the Miller CRAT, petitioner caused the partnership and Bear Stearns International Ltd. (Bear Stearns) to enter into a variable forward purchase contract concerning the BMY stock. The

confirmations of this agreement set forth the terms of the BMY stock sale including a "purchase date" of August 2001. Bear Stearns paid the partnership $198 million in 1999, however, under the agreement.

The partnership made cash distributions to the Miller CRAT during the years at issue. These distributions were calculated to meet the Miller CRAT's monthly distribution obligations to petitioner. The primary source of these distributions was the $198 million payment from Bear Stearns. The Miller CRAT made CRAT distributions in excess of $204 million to petitioner from July 1999 through June 2001. Petitioner treated the CRAT distributions as nontaxable returns of corpus under section 664(b) on her tax returns for the years at issue.

Respondent challenged petitioner's reporting position under two alternative theories. Respondent's first theory is presented in the FPAA. Respondent determined in the FPAA, among other things, that the partnership made a closed and completed sale of the BMY stock when it executed the variable prepaid forward contract and therefore had approximately $214 million in capital gain income for 1999 (partnership gain issue). Respondent determined the $214 million gain by subtracting the partnership's basis in the BMY stock from the consideration the partnership received from Bear Stearns ($198 million in cash plus the contingent right to future appreciation, according to

respondent). Petitioner caused Nevadamax, the partnership's tax matters partner, to timely file a petition with this Court. The partnership-level case is pending at docket no. 16013-08.

Respondent's second theory is included in the deficiency notice, in which respondent challenges petitioner's tax treatment of the CRAT distributions under section 1.643(a)-8, Income Tax Regs. (the CRAT anti-abuse regulation). Essentially, respondent determined that the Miller CRAT is treated as having sold a pro rata portion of the BMY stock in the years at issue and therefore the CRAT distributions are properly treated as capital gains rather than a return of corpus under the CRAT anti-abuse regulation.

Petitioner timely filed a petition with this Court, and respondent filed a motion to dismiss for lack of jurisdiction before filing an answer. It is this motion that we address.

### Discussion

We must decide whether the deficiency notice is invalid because it adjusts affected items and was issued before the conclusion of the related partnership-level proceeding. We first discuss the tax treatment of distributions from charitable remainder annuity trusts generally. We then turn to respondent's treatment of the CRAT distributions in the deficiency notice. Finally, we examine respondent's determinations in the deficiency

notice under the TEFRA partnership provisions to decide we do not have jurisdiction.

I.  Distributions from Charitable Remainder Annuity Trusts

The tax treatment of distributions from a charitable remainder annuity trust to its beneficiary is determined under a four-tier system.  See sec. 664(b).  First, all amounts distributed to the beneficiary are characterized and taxed as ordinary income to the extent that the trust has ordinary income for the year and undistributed ordinary income for past years. Sec. 664(b)(1).  If the payment exceeds the total of ordinary income for the current year and undistributed ordinary income for past years, capital gain income is distributed to the extent of the trust capital gain income for the current year and undistributed capital gain income from prior years.  Sec. 664(b)(2).  If the payment exceeds the total of current and accumulated ordinary income and capital gain income for the year of distribution, then other income (generally, tax-exempt income) is distributed to the extent of the trust's other income for the year and other income that is undistributed for prior years. Sec. 664(b)(3).  Finally, if any portion of the payment in a given year exceeds the sum of current and accumulated income and gains, the balance is treated as a return of trust corpus.  Sec. 664(b)(4).

Each year the trustee must completely distribute all of the historical value of income in one category before distributing any from the next category. The four-tier system causes a beneficiary to treat distributions from a charitable remainder annuity trust as being pulled first from sources with the highest income tax rate.

Tax planners began to look for ways around the four-tier system to avoid higher tax rates for their clients. The Secretary issued the CRAT anti-abuse regulation in January 2001 to address inappropriate manipulation of the four-tier system for tax avoidance. See T.D. 8926, 2001-1 C.B. 492. The CRAT anti-abuse regulation disregards all transactions that circumvent the regulation's purpose of preventing taxable capital gain from being characterized as nontaxable return of corpus. Sec. 1.643(a)-8(a) and (b)(2), Income Tax Regs. The charitable remainder annuity trust is then treated as having sold a pro rata portion of its assets for years in which it makes a distribution. Sec. 1.643(a)-8(b), Income Tax Regs.

Respondent challenges petitioner's tax treatment of the CRAT distributions under the CRAT anti-abuse regulation. Respondent ultimately concludes that the CRAT anti-abuse regulation applies and petitioner erroneously treated the CRAT distributions as return of corpus rather than capital gain for the years at

issue.[3]  The regulation applies only, however, to the extent that

the CRAT distributions would otherwise be characterized in the

hands of petitioner as distributions of trust corpus.  See sec.

1.643(a)-8(b)(1), Income Tax Regs.  Accordingly, the CRAT anti-

abuse regulation cannot apply if the partnership gain issue is

upheld in the partnership-level proceeding.  The distributions

would then be characterized as gain under section 664(b)(2)

rather than as returns of corpus under section 664(b)(4).

With this understanding of respondent's determinations in

the deficiency notice, we now turn to the jurisdictional issue in

this case.

## II.  Our Jurisdiction Under TEFRA

The Tax Court is a court of limited jurisdiction, and we may

exercise our jurisdiction only to the extent provided by

Congress.  See sec. 7442; see also GAF Corp. & Subs. v.

Commissioner, 114 T.C. 519, 521 (2000).  We have jurisdiction to

redetermine a deficiency if a valid notice of deficiency is

issued by the Commissioner and a timely petition is filed by the

taxpayer.  GAF Corp. & Subs. v. Commissioner, supra at 521.  We

---

[3]In doing so, respondent determined that the Miller CRAT's
participation in the partnership is disregarded for purposes of
determining the tax treatment of the distributions.  Respondent
therefore treated the Miller CRAT as having sold a pro rata
portion of the BMY stock during the years at issue and
recognizing capital gain to the extent the CRAT distributions
exceeded the stock's allocable basis.

have jurisdiction in this case only if the notice of deficiency sent to petitioner is valid.

Petitioner argues that the deficiency notice is valid because it adjusts items that are unrelated to the determinations in the FPAA. Respondent counters that the deficiency notice is invalid because it adjusts items that depend on the outcome of the partnership gain issue in the partnership-level proceeding. We agree with respondent.

Partnership items are determined in partnership-level proceedings under TEFRA, while nonpartnership items are determined at the individual partner level. Sec. 6221; Affiliated Equip. Leasing II v. Commissioner, 97 T.C. 575, 576 (1991). A partnership item is any item required to be taken into account for the partnership's taxable year to the extent regulations specify it is an item more appropriately determined at the partnership level than the partner level. Sec. 6231(a)(3). We agree with the parties that the partnership gain issue (both its timing and amount) and each partner's distributive share of any partnership gains are partnership items.[4] See sec. 301.6231(a)(3)-1(a)(1), (b), Proced. & Admin.

---

[4]Partnership items include "The partnership aggregate and each partner's share of * * * Items of income, gain, loss, deduction or credit of the partnership." Sec. 301.6231(a)(3)-1(a)(1), Proced. & Admin. Regs. Partnership items also include "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain,
(continued...)

Regs. These partnership items are in dispute in the partnership-level proceeding and will be finally determined there.

Partnership-level determinations also impact certain items of individual partners. These are referred to as affected items, and their resolution depends on partnership-level determinations. See sec. 6231(a)(5); Maxwell v. Commissioner, 87 T.C. 783, 792 (1986). In general, the Commissioner has no authority to assess a deficiency attributable to any partnership item until the partnership-level proceeding is completed. Sec. 6225(a); see GAF Corp. & Subs. v. Commissioner, supra at 526. Accordingly, a deficiency notice adjusting affected items is generally invalid if it is issued before the conclusion of the partnership-level proceeding, and we therefore have no jurisdiction. See GAF Corp. & Subs. v. Commissioner, supra at 528; Soward v. Commissioner, T.C. Memo. 2006-262.

We now turn to whether the adjustments in the deficiency notice are attributable to affected items that flow from the partnership gain issue so that we lack jurisdiction over them here. Petitioner argues that respondent's recharacterization of the CRAT distributions under the CRAT anti-abuse regulation and

---

[4](...continued)
loss, deduction, etc." Sec. 301.6231(a)(3)-1(b), Proced. & Admin. Regs.

the related penalties are not affected items.[5]  We disagree.

Both items are in fact affected items that must await a

determination of the partnership gain issue at the partnership

level.

An affected item is any item to the extent such item is

affected by a partnership item.  See sec. 6231(a)(5).  Further,

any item whose existence or amount is dependent on a partnership

item is an affected item.  See Maxwell v. Commissioner, supra at

791.  Recharacterization of the CRAT distributions, whether under

section 664(b)[6] or the CRAT anti-abuse regulation, depends upon a

final determination of the partnership gain issue.  We must await

the conclusion of the partnership-level proceeding to know the

timing and amount of the partnership gain issue.  We may then

determine the character of the CRAT distributions, either as gain

or return of corpus, under section 664(b).  We must know the

character of the CRAT distributions under section 664(b) to

determine whether the CRAT anti-abuse regulation applies at all

---

[5]Although petitioner's argument is not entirely clear, she appears to contend that the operation of the CRAT anti-abuse regulation would be an affected item only if it had a bearing on the taxable amount of the CRAT distributions arising from the partnership gain issue.  We reject this argument.  An affected item is any item to the extent such item is affected by a partnership item.  See sec. 6231(a)(5).  An affected item is not required to have an impact on any other item, however.

[6]The parties agree that the tax treatment of the CRAT distributions under sec. 664(b) is an affected item.

to recharacterize a return of corpus as capital gain income.[7] Accordingly, we hold that the operation of the CRAT anti-abuse regulation is an affected item.[8]

In addition, respondent determined that petitioner is liable for accuracy-related penalties under section 6662 for the years at issue. The penalties do not arise from the adjustments in the FPAA. Instead, these penalties depend upon operation of the CRAT anti-abuse regulation. Accordingly, the penalties are affected items that must await determinations at the partnership level. See Meruelo v. Commissioner, 132 T.C. __, __ (2009) (slip op. at 20-21).

---

[7]This is true even if respondent is required to make computational adjustments only for any portion of the CRAT distributions properly characterized as capital gain income under sec. 664(b).

[8]Petitioner argues that this proceeding provides her only opportunity to challenge the validity of the CRAT anti-abuse regulation. We disagree. The recharacterization of the CRAT distributions under the CRAT anti-abuse regulation requires various partner-level determinations, including, but not limited to, the values and bases of the Miller CRAT's assets. See sec. 1.643(a)-8(b)(1) and (2), Income Tax Regs.; see also sec. 6230(a)(2)(A)(i); Estate of Quick v. Commissioner, 110 T.C. 172, 181-182 (partner-level determination under sec. 469 passive loss rules is an affected item), supplemented by 110 T.C. 440 (1998); Jenkins v. Commissioner, 102 T.C. 550, 556-557 (1994) (characterization of a guaranteed payment as a lump-sum payment under sec. 104 is an affected item). Accordingly, petitioner may have the opportunity to challenge the regulation's validity, if necessary, in an affected items deficiency proceeding after the conclusion of the partnership-level proceeding.

III. <u>Conclusion</u>

We conclude that respondent improperly issued the deficiency notice recharacterizing the CRAT distributions before the decision of this Court has become final in the ongoing partnership-level proceeding. Accordingly, we hold that the deficiency notice is invalid and there is no jurisdictional basis upon which this Court may consider the adjustments.

We have considered all the arguments of the parties, and, to the extent we have not addressed them, we find them to be irrelevant, moot, or meritless.

To reflect the foregoing,

<u>An appropriate order</u>
<u>of dismissal for lack of</u>
<u>jurisdiction will be entered</u>.